**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH WATT, | ) | CASE NO. 3:22-CV-01827-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant, | ) | |

**I. Introduction**

Plaintiff, Kenneth Watt ("Watt" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 16, 2020, Claimant filed an application for DIB, alleging a disability onset date of March 13, 2020. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 10, PageID #: 477). On July 19, 2021, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*, PageID #: 407). On July 28, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.*, PageID #: 388). The ALJ's decision

became final on August 9, 2022, when the Appeals Council declined further review. (*Id.*, PageID #: 375).

On October 11, 2022, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 11 and 12). Claimant asserts the following assignments of error:

> (1) The ALJ's residual functional capacity determination is not supported by substantial evidence.
>
> (2) The ALJ's determination does not adequately account for all of Mr. Watt's mental limitations.

(ECF No. 11 at 5 and 8, respectively).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleges limitations resulting from breathing problems and mental health impairments that he states restrict his ability to work. He said he was originally diagnosed with Mounier-Kuhn syndrome in 2018 when he was hospitalized for pneumonia and a collapsed lung. He was able to return to work until March 2020 and then quit working because he was concerned about being infected with COVID-19 because his job was in a hospital. He said no doctor told him to quit working or told him he was at high risk for contracting COVID-19. He reported that he had to use two machines for the rest of his life to keep his lungs clear. One was a percussion vest that pumped his chest to loosen mucus and the other was a nebulizer machine. He used the vest twice a day in the morning and at night and this took about 50-60 minutes each time. He used the nebulizer three times a day in the morning, middle of the day, and at night and this took about 20 minutes each time. These were prescribed to him during the time period he continued to work full time and he said he did not use them during the day and used them when he could. He said he was unsure how far he could walk but he said he did get short of breath at times from exertion. He could stand okay but moving around is what the issue was caused him problems. He said he could bend at the waist and said he could squat using his knees but not continuously because

>   that would cause him to have problems breathing. He had a driver's license and reported no problems with driving. He said he was right handed and while no doctor had placed him on lifting restrictions, he self-limited lifting and carrying to about 5-10 pounds. He had no problems using his hands and had no problems sitting. He was able to sleep for 7-8 hours each night and did not take naps during the day. He said he did not need help with showering or bathing, he could prepare simple meals, and he could do household chores although he reported he sometimes had shortness of breath while doing these tasks. He liked to build model cars and said he used to go to church prior to COVID-19 but he had stopped and his social anxiety had worsened since COVID-19 started. He said on average he experienced shortness of breath about 2-3 times a week and he was unsure when it would occur. When this did occur, he would sit down and allow himself to cough and if it was really bad, he could do a breathing treatment. He had not been to the grocery store as much due to COVID-19 but said he would go to the store for small things. He reported occasional panic attacks and he never knew when these would happen. He had anxiety all day, every day and this caused him to have difficulty with concentration.

(ECF No. 10, PageID #: 397-98, Tr. at 23-24).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

>   In April 2018, it was noted the claimant had recently spent two days in the hospital due to pneumonia and pneumothorax. He said since discharge, he had felt great. (Exhibit 2F/18). In September 2019, the claimant reported he had no complaints and said he felt great. (Exhibit 8F/7). A November 2019 chest CT scan showed persistence of tracheobronchomegaly with no significant involvement beyond the mainstream bronchi. There was slightly increased caliber of the supra-aortic trachea and there were no tracheobronchial diverticula identified. Minimal to mild paraseptal emphysema was noted. There was also a 0.5 solid nodule in the right lower lobe, likely a benign sequela of an infections or inflammatory process. (Exhibit 1F/8-9). It was noted this exam was done for a check-up of previously diagnosed Mounier-Kuhn syndrome with bronchiectasis and the claimant reported no new complaints at this time and had previously had pneumonia with chest tube placement 18 months prior to this exam. (1F/8). A pulmonary function test was completed in November 2019 and showed FVC of 5.77 and FEV1 of 4.18, pre-bronchodilators. It

3

>was noted this was a normal spirometry with normal lung volumes and DLCO. (1F/14).
>
>In June 2020, it was noted the claimant was not on supplemental oxygen and used a nebulizer and percussion vest twice a day. He reported coughing with sputum and moderate shortness of breath with exertion. Anxiety disorder was listed in the diagnoses and he was prescribed Buspar. (Exhibit 2F/17). Examination showed lungs were clear with no rales, no rhonchi, and no wheezes. (Exhibit 5F/9). In October 2020 at a follow-up visit, the claimant was to continue the same treatment and was encouraged to exercise and stay active. He denied coughing, wheezing, and shortness of breath. He denied hospital stays, antibiotics, and steroids for breathing since his last visit. (Exhibit 4F/7-9). Pulmonary examination showed no adventitious sounds noted, even and easy respirations, no retractions or use of accessory muscles noted, and he had no tenderness or crepitus noted in his chest. (4F/9). Oxygen saturation was 97%. (Id.).
>
>In November 2020, the claimant treated for refills and stated he was doing well considering the state of the union at this time. Examination showed lungs were clear with no rales, no rhonchi, and no wheezes. Buspar was refilled. (Exhibit 5F/7-8).
>
>In January 2021, the claimant treated at Foundations Behavioral Health for a diagnostic assessment and reported problems due to stopping work and losing his house, and current relationship issues with his girlfriend. (Exhibit 7F/2). Mental status examination showed he was well groomed, had an average demeanor, average eye contact, clear speech, no delusions or hallucinations, was not aggressive, logical thought processes, fair insight, depressed and anxious mood, full affect, was cooperative, had a mild impairment in attention and concentration, and was of average intelligence. (7F/9-10). Diagnosis was adjustment disorder with mixed anxiety and depressed mood and the claimant was referred to counselling. (7F/11).

(*Id.*, PageID #: 398-99, Tr. at 24-25).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: anxiety disorder; Mounier-Kuhn syndrome with bronchiectasis and tracheobronchomalacia; and adjustment disorder with mixed

4

> anxiety and depressed mood/dysthymic disorder (20 CFR 404.1520(c)).

(*Id.*, PageID #: 393, Tr. at 19).

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except postural limitation of occasional climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent stooping, kneeling, and crouching. Occasional crawling. Environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights. Additional environmental limitation to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. Occasional interaction with the general public, coworkers, and supervisors.

(*Id.*, PageID #: 397, Tr. at 23).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 13, 2020, through the date of this decision (20 CFR 404.1520(g)).

(*Id.*, PageID #: 402, Tr. at 28).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step

five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

#### 1. Claimant's Physical RFC is Supported by Substantial Evidence.

In his first issue, Watt asserts that the physical RFC is not supported by substantial evidence. In support, he argues that the evidence shows that he "lacks the ability to stand and walk for 6 hours out of an 8-hour workday. Thus, he cannot perform light work as the ALJ found." (ECF No. 11 at 6). Watt points to his symptoms of "difficulties [with] shortness of breath, on exertion." (*Id.* at 7). Additionally, Watt states that "Mr. Collins [sic] has a Mounier-Kuhn syndrome with bronchiectasis and tracheobronchomalacia; shortness of breath, coughing with sputum, and requires multiple breathing treatments throughout the day, including a nebulizer treatment and a percussion machine."[1] (*Id.* (citing Tr. 45-46; 243; 245; 266; 269; 279)). The Commissioner argues that the RFC is supported by substantial evidence. This Court agrees with the Commissioner.

Prior to determining that Claimant could not perform his past relevant work at step four, the ALJ determined Claimant's RFC. The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except postural limitation of occasional climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent stooping, kneeling, and crouching. Occasional crawling. Environmental limitation to avoid

---

[1] The Court is unclear why Claimant references a "Mr. Collins." The Court assumes that Claimant meant Mr. Watt—who is the claimant here—and that the reference to Mr. Collins was made in error.

> all exposure to hazards, such as dangerous moving machinery and unprotected heights. Additional environmental limitation to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. Occasional interaction with the general public, coworkers, and supervisors.

(ECF No. 10, PageID #: 397, Tr. at 23). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

Watt argues that the ALJ wrongly concluded that he could perform light work (with additional limitations). Under the CFR:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

§ 404.1567(b). Social Security Ruling 83-10 elaborates on the activities needed to carry out the requirements of light work:

> The regulations define light work as lifting no more than 20

8

> pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, *5-*6.

Here, Watt argues that he cannot stand or walk for the six hours out of an eight-hour workday (ECF No. 11 at 6-7), which is necessary to perform light work. In support, he refers to his symptoms of difficulty with shortness of breath on exertion and coughing with sputum. (ECF No. 11 at 7). Watt cites his diagnosis of Mounier-Kuhn syndrome[2] with bronchiectasis[3] and

---

[2] "Mounier-Kuhn syndrome is a lung disorder that causes the respiratory tract to dilate or enlarge." NATIONAL CENTER FOR ADVANCING TRANSLATIONAL SCIENCES, GENETIC AND RARE DISEASES INFORMATION CENTER, *Mounier-Kuhn syndrome* (https://rarediseases.info.nih.gov/diseases/3793/mounier-kuhn-syndrome, last visited September 27, 2023).

9

tracheobronchomalacia[4] and the treatments of his symptoms using multiple breathing treatments each day, including a nebulizer treatment and percussion machine. (*Id*.).

There is no dispute that Watt suffers from Mounier-Kuhn syndrome with bronchiectasis and tracheobronchomalacia. Watt directs the Court to test results "that revealed persistent dilation of the trachea and bilateral mainstem bronchi; minimal to mild emphysema; and a .5cm solid nodule in the right lower lobe." (ECF No. 11 at 8 (citing Tr. 243)). However, the diagnoses alone are not enough to establish functional limitations. *Fackler v. Saul,* No. 3:20-CV-00790, 2021 WL 3493511, at *11 (N.D. Ohio July 16, 2021)*, report and recommendation adopted sub nom. Fackler v. Comm'r of Soc. Sec.,* No. 3:20-CV-790, 2021 WL 3492129 (N.D. Ohio Aug. 9, 2021)("A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *see Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that [claimant] was significantly limited from performing basic work activities for a continuous

---

[3] "Bronchiectasis ("bronk-ee-EK-tuh-sis") is a lung condition where your airways (tubes going into your lungs) get damaged and widen. Damaged airways can't clear mucus like they're supposed to. Bacteria then grows in the mucus, causing more inflammation and damage to your lungs. This makes you cough a lot as your body tries to remove the infected mucus." CLEVELAND CLINIC, *Diseases & Conditions, Bronchiectasis*, (https://my.clevelandclinic.org/health/diseases/21144-bronchiectasis last visited September 27, 2023).

[4] "Tracheobronchomalacia (TBM) is a condition caused by a weak airway that collapses when the patient breathes. It can present either at birth or in adulthood with a cough, shortness of breath and/or recurrent infections. TBM occurs when the walls of the airway (specifically the trachea and bronchi) are weak." NATIONAL ORGANIZATION FOR RARE DISORDERS NORD, *Rare Diseases, Tracheobronchomalacia* (https://rarediseases.org/rare-diseases/tracheobronchomalacia/#disease-overview-main last visited September 27, 2023).

period of time."; *cf. Vance v. Comm'r of Soc. Sec.,* 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits"). Here, substantial evidence supports the ALJ's determination that Watt can perform light work (with the additional limitations). Watt does not cite to any portion of the record that connects his diagnoses or test results to functional limitations.

The ALJ considered each of the symptoms raised by Watt and determined that "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (ECF No. 10, PageID #: 398, Tr. at 24). The ALJ acknowledged that Watt reported shortness of breath but also noted that it happened about two to three times a week and that Watt was able to alleviate the symptom by allowing himself to cough or, if necessary, use a breathing treatment. The ALJ cited the medical record during which Watt complained about shortness of breath and noted that the objective evidence states that his lungs were clear with no rhonchi and no wheezing. (*Id*., PageID #: 399, Tr. at 25). The ALJ noted that Watt used two machines, a percussion vest and a nebulizer, to keep his lungs clear. (*Id*.). However, the ALJ stated that Watt used the percussion vest twice a day and the nebulizer three times a day and that he had used them when he was employed full time. (*Id.*). There is no indication in the record, and Watt cites to none, that the use of these machines prevented him from engaging in full time work.

Moreover, the ALJ properly relied on the opinion of the state agency medical consultant in assessing the RFC and their opinion constitutes substantial evidence to support the ALJ's decision. *See Moats v. Comm'r of Soc. Sec. Admin*., No. 3:20-CV-00265, 2021 WL 2905079, at *17 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom. Moats v. Comm'r of Soc. Sec*., No. 3:20- CV-265, 2021 WL 2216804 (N.D. Ohio June 2, 2021) (prior

11

administrative medical findings are substantial evidence). The first state agency consultant reviewed the medical evidence and determined that Watt was able to perform light work with postural limitations of occasionally climbing ladders, ropes or scaffolds, and crawling and frequently climbing ramps and stairs, stooping, kneeling, and crouching. The consultant opined that Watt should avoid concentrated exposure to pulmonary irritants and hazards. (ECF No. 10, PageID #: 440, Ex. 2A). The ALJ found the opinion "mostly persuasive" but felt that the medical evidence supported "a greater environmental limitation to avoid all exposure to hazards due to the claimant's breathing difficulties." (*Id.*, PageID #: 399, Tr. at 25). The ALJ then relied upon the opinion of the state agency consultant on reconsideration, which included that Watt should avoid all exposure to hazards. (*Id.*, PageID #: 450-51, Ex. 4A). The ALJ found this opinion "persuasive" because it was "consistent with and supported by the medical evidence of record." (*Id.*, PageID #: 399, Tr. at 25).

Since there is substantial evidence to support the ALJ's decision, even if Watt could demonstrate evidence to support a more restrictive RFC, the Court cannot overturn the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003).

**2. Claimant's Mental RFC is Substantial Evidence**

In his second issue, Watt argues that the ALJ "found the opinions of the State agency psychologists 'persuasive', however, he failed to include all of these limitations in his residual functional capacity determination, without explanation." (ECF No. 11 at 8 (citing Tr. at 26)). Specifically, Watt argues that the ALJ failed "to acknowledge or include" that he required the following limitations: that "tasks should be explained slowly and clearly"; that any changes to his work environment or procedures "be made known in advance"; that his work would not "require him to meet strict deadlines, work quotas, or maintain intense concentration for

12

extended periods"; and that he is only "[c]apable of superficial interaction in the workplace." (ECF No. 11 at 10 (citing Tr. at 68)). Watt also asserts that "it can only be assumed that the ALJ relied on his lay opinion" because he did not include the limitations verbatim in the RFC. (*Id.* at 11).

First, it is well-established that an ALJ's RFC need not adopt an expert's verbatim even if the ALJ found the opinion persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (noting that an ALJ is not required to adopt each restriction of an expert to which it gave great weight); *Hogan v. Comm'r of Soc. Sec.*, No. 1:20-cv-01311, 2021 WL 4477786, at *4 (N.D. Ohio Sept. 30, 2021) ("there is no requirement that, once finding an opinion persuasive, the ALJ must adopt the whole opinion."). Although Watt suggests that the ALJ relied on his "lay opinion" to determine the RFC, he does not point to any specific examples and, upon review of the decision, this Court finds none. "To the extent that [Watt's] 'lay opinion' critique reflects discomfort with the ALJ's evaluating functional capabilities at all, that, of course, is precisely the ALJ's role." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 901 (6th Cir. 2019) (citing 20 C.F.R. § 404.1527(d)(2)).

Second, this Court notes that the ALJ did not "fail[] to acknowledge" the limitations opined by the state agency psychological consultants as Watt suggests. In the decision, the ALJ wrote:

> the state agency psychological consultants opined that the claimant had a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself. The claimant is limited to short and repetitive tasks that does not require him to understand or remember more than 2-4 step instructions at once. These tasks should be explained slowly and clearly to him. He is capable of superficial interaction in the workplace. The claimant is limited to a work environment

> with infrequent changes in the type of work that is conducted or in the procedures necessary to complete the work that is assigned. Any changes should be made known in advance. (Exhibits 2A & 4A).

(*See* ECF No. 10, PageID #: 400, Tr. at 26). Thus, the ALJ specifically referenced the state agency opinions that any changes to Watt's work environment or procedures "be made known in advance"; that tasks should be explained slowly and clearly; and that Watt is only capable of superficial interaction in the workplace. Additionally, the ALJ noted Watt's "[p]ossible distraction due to depression or anxiety[,]" and limited Watt to "simple, routine, and repetitive tasks, but not at a production rate pace" due to moderate limitations on his ability to maintain concentration, persistence, and pace. (*Id.,* PageID #: 401, Tr. at 27). Although not verbatim, this language shows that the ALJ considered the state agency consultants' opinions that Watt be limited to work that would not "require him to meet strict deadlines, work quotas, or maintain intense concentration for extended periods." Accordingly, the ALJ acknowledged and considered each of the state agency consultants' opinions as to Watt's mental limitations when crafting Watt's RFC.

Watt argues that the ALJ erred by not including each of the opined limitation in the RFC since the ALJ found the opinions persuasive. As discussed above, however, an ALJ need not accept verbatim the opined limitations of a medical opinion even if the ALJ finds that opinion to be persuasive. Here, the ALJ found that the state agency opinions were persuasive and that the opinions "are consistent with and supported by the medical evidence of record that shows the claimant has no more than moderate limitations in his mental health functioning" (*id.*); the ALJ then accounted for the functional limitations in each of the four areas of mental functioning and included the limitations they deemed appropriate:

> The ALJ accounted for Watt's moderate limitations in his ability to understand,

14

remember, or apply information by limiting him to "simple, routine, and repetitive tasks[.]" *See Phillips v. Saul*, No. 3:18-CV-478-HBG, 2020 WL 1529362, at *11-*12 (E.D. Tenn. Mar. 30, 2020). The ALJ explained Watt's limitations in this area of mental functioning:

> During the consultative examination ("CE"), it was noted the claimant had no difficulty understanding any instructions given to him. His memory appeared adequate. His ability to carry out instructions would be good, assuming the instructions were clear and concrete, rather than abstract. He does have limitations in understanding abstract concepts. The claimant reported that he was able to drive, manage his own finances, do household chores, and could occasionally shop. (Exhibit 6F). At the hearing, the claimant reported that he was able to prepare simple meals, drive a car, do chores, and he said he liked to build model cars.

(ECF No. 10, PageID #: 395, Tr. at 21). Thus, the ALJ adequately explained the limitation included in the RFC. Watt does not attack the ALJ's limitations for this area of mental functioning. (*See* ECF No. 11).

The ALJ accounted for Watt's moderate limitation in his ability to maintain concentration persistence, or pace by limiting him to work "in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions[.]" (ECF No. 10, PageID #: 397, Tr. at 23). Watt argues the RFC did not include the additional limitations that Watt be limited to "short and repetitive tasks" that do not require him to "understand or remember more than 2-4 step instructions at once" and that "[t]hese tasks should be explained slowly and clearly to him". (ECF No. 11 at 12). However, the ALJ cited to evidence in the record demonstrating that such greater limitations in this area were not warranted. The ALJ noted that Watt acknowledged that he is able to perform multi-step tasks in his daily life and that he builds model cars as a hobby. (ECF No. 10 at 395, Tr. at 22). Moreover, at his consultative examination, Watt's "concentration and pace were variable" and Watt "had normal pace and could maintain attention, concentration, persistence in pace in a wide

range of tasks." (*Id.*, PageID #: 400, Tr. at 26). Watt does not cite to any evidence in the record that the ALJ failed to consider and that would support greater limitations. Thus, substantial evidence supports the ALJ's included limitations.

The ALJ accounted for Watt's moderate limitation in his ability to interact with others. Watt argues that the ALJ failed to include a restriction to superficial interaction with others in the RFC. (ECF No. 11 at 10). The Commissioner argues that "restriction to superficial interaction was accommodated by the RFC limitation to only occasional interaction[.]" (ECF No. 12 at 15, n.5). Here, the ALJ found that Watt's "moderate social difficulties support interacting occasionally with supervisors, co-workers, and with the general public." (*Id.*, PageID #: 401, Tr. at 27). The ALJ arguably accounted for Watt's alleged "moderate" impairment in interacting with others, as he limited Watt to occasional interaction with the general public, coworkers, and supervisors. *See Schaefer v. Comm'r of Soc. Sec.*, No. 13-10105, 2014 WL 562436, at *2 (E.D. Mich. Feb. 13, 2014) (ALJ's limitation that claimant "must have no more than occasional interaction with the public or co-workers," adequately accounted for claimant's moderate impairments.). "[T]he distinction between 'superficial' and 'occasional' interaction, to the extent there [is] one, [is] inconsequential." *Davis v. Comm'r of Soc. Sec.,* No. 3:22-CV-01259, 2023 WL 5214114, at *3 (N.D. Ohio Aug. 15, 2023) (citing *Reeves*, 618 F. App'x at 275). Accordingly, the limitation to "occasional" interaction accounts for the state agency psychological consultants' opinions regarding Watt's capacity for only superficial interactions.

The ALJ accounted for Watt's moderate limitation in his ability to adapt or manage himself by limiting him to "few if any work place changes." (*See* ECF No. 10, PageID #: 442, Tr. at 68 (explaining Watt's moderate limitation in this area of functioning: "The claimant is limited to a work environment with infrequent changes in the type of work that is conducted or

16

in the procedures necessary to complete the work that is assigned.")). Watt does not attack the ALJ's finding regarding his limitations in his ability to adapt or manage himself. (*See* ECF No. 11).

Finally, the decision adequately details that the ALJ also considered Watt's depression and anxiety and explained how limitations caused by these impairments were included in the RFC:

> Possible distraction due to depression or anxiety was taken into account regarding lack of exposure to common workplace hazards. Due to these conditions causing moderate limitations on the claimant's ability to maintain concentration, persistence, and pace, he is also limited to simple, routine, and repetitive tasks, but not at a production rate pace. His moderate social difficulties support interacting occasionally with supervisors, co-workers, and with the general public. Finally, his moderate difficulties adapting and managing himself support limiting him to tolerating only work related decisions with few if any workplace changes. In view of all of the factors discussed above, these limitations on the claimant's capacities are considered warranted, but no greater or additional limitations are justified.

(ECF No. 10, PageID #: 401, Tr. at 27). Although Watt disagrees with the ALJ's decision, he points to no evidence that was not considered by the ALJ and that would have supported greater limitations.

Thus, it is clear—implicitly from the consideration of the record and explicitly from the moderate limitations—that the ALJ recognized Watt's mental impairments and their impact on his ability to understand, remember or apply information; interact with others; maintain concentration, persistence, or pace; and his ability to adapt or manage himself and tailored the RFC accordingly. Although there may be evidence to also support a finding that Watt could have been deemed more limited, the ALJ is still ultimately responsible for analyzing the evidence of record and formulating Claimant's RFC. The Court finds that substantial evidence supports the

RFC and that the ALJ was well within their "zone of choice" in this instance. *See Blakley*, 581 F.3d at 407.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 5, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).